50 F.Supp.2d 918 (1999)
Mike McCANN, et al., Plaintiffs,
v.
FORT ZUMWALT SCHOOL DISTRICT, et al., Defendants.
No. 4:98CV1790 RWS.
United States District Court, E.D. Missouri, Eastern Division.
April 27, 1999.
*919 Joseph L. Green, Baerveldt and Bagsby, St. Charles, MO, for Mike McCann, by and through his parent, nfr, Robert McCann, Erin Fannning, by and through her parent, nfr, Deanna Reinwald, Michelle Aubuchon, by and through her parent, nfr, Zoe Aubuchon, Matt Krueger, by and through his parent, nfr, Mary Roseman, Charlene Launius, by and through her parent, nfr, Mary Faith Launius, Tonya Lesch, by and through her parent, nfr, Joann Lesch, David Graham, by and through his parent, nfr, Michelle Graham, Adrianne Casagrand, by and through her parent, nfr, Connie Casagrand, David Alton, by and through his parent, nfr, Byron Alton, Kari Doerrer, by and through her parent, nfr, Kathleen Doerrer, Leanna Garcia, by and through her parent, nfr, Martha Anderson, Pamela Sue Gililland, by and through her parent, nfr, Joann Gililland, Patrick Griefe, by and through his parent, nfr, Shirley Griefe, Jason Nickell, by and through hhis parent, nfr, Dennis Nickell, Jay Tibbits, by and through his parent, nfr, Steve Tibbits, plaintiff.
Christopher E. McGraugh, Leritz and Plunkert, St. Louis, MO, Joseph L. Green, for Sarah Hemby, by and through her parent and next friend, nfr, Elizabeth Hemby, plaintiffs.
Thomas E. Tueth, Partner, Peter G. Yelkovac, Blackwell and Sanders, St. Louis, MO, for Fort Zumwalt School District, Bernard J. Dubray, defendants.

MEMORANDUM AND ORDER
SIPPEL, District Judge.
This matter is before the Court on the motion for summary judgment filed by defendants Fort Zumwalt School District ("the District") and its Superintendent, Bernard DuBray. Plaintiffs are individual student members of the Fort Zumwalt North High School Marching Band ("Marching Band") who allege that their constitutional rights were violated when Superintendent DuBray prohibited them from performing the song "White Rabbit" as part of the Marching Band's fall program.
The Fort Zumwalt School District has the authority and the responsibility to refuse *920 to sponsor student speech that might reasonably be perceived to advocate drug or alcohol use or conduct otherwise inconsistent with the shared values of a civilized order. Hazelwood School Dist. v. Kuhlmeier, 484 U.S. 260, 272, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988). Here the District limited a school-sponsored Marching Band's choice of music by rejecting music the District reasonably believed promoted the illegal use of drugs. This Court cannot reject as unreasonable the Superintendent's conclusion to withdraw the song "White Rabbit" from the Marching Band's production.
As the United States Supreme Court observed in Hazelwood, to rule otherwise would unduly constrain schools from fulfilling their role as "a principal instrument in awakening the child to cultural values, in preparing him [or her] for later professional training, and in helping him [or her] to adjust normally to [their] environment." Id. at 272, 108 S.Ct. 562, (quoting Brown v. Board of Education, 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873 (1954)).
The evidence shows that there is an absence of any genuine issue for trial, and as a matter of law, plaintiffs cannot prevail on any of the theories they have presented. Therefore, the Court will grant defendants' motion for summary judgment.

Facts
The material facts are undisputed.
Superintendent DuBray serves as the representative of the Board of Education and the Chief Executive Officer for the District. In this capacity, he has authority to direct the management of the District. DuBray is specifically responsible for overseeing the "pattern and sequence of educational experiences provided for children from kindergarten through grade twelve."
During the relevant time, Robert Babel was the Band Director at Fort Zumwalt North High School ("High School"). In his capacity as Band Director, Babel directs and conducts the Marching Band, selects its music, and arranges the schedule and performances for the Marching Band.
The Marching Band is part of the fall curriculum for the High School course "Symphonic Band." During the fall season, the students enrolled in Symphonic Band practice their marching show and are required to participate in scheduled performances, such as High School football games and inter-scholastic competitions. The students' performance in these events becomes part of their overall grade for the course, and they are excused from participation only upon parental request and for good cause.
All students enrolled in Symphonic Band are required to be members of the Marching Band, unless they are involved in another after-school activity which conflicts with rehearsals or football games. Similarly, students are not allowed to participate in the Marching Band unless they are enrolled in Symphonic Band or Color Guard, which accompanies the Marching Band during its performances.
Students receive a letter grade and earn academic credit as a result of their enrollment in Symphonic Band. According to the High School's curriculum guide, Symphonic Band is designed to impart particular skills  showing enthusiasm for public performance, performing with correct playing position and following the conductor  to participating students.
After the fall marching season ends, the Symphonic Band class participates in concert performances until the end of the school year. The music selected for and performed during the concert season differs from the music selected for and performed during the marching season.
For the Marching Band's 1998-99 fall marching season, Babel selected a theme centered on popular rock music from the late 1960s and early 1970s. In accordance with this theme, he included the song "White Rabbit" by Jefferson Airplane in the Marching Band's program.[1]
*921 The Marching Band was scheduled to participate in four inter-scholastic competitions during the 1998-99 fall semester. As Band Director, Babel was responsible for selecting the competitions and arranging the Marching Band's participation in the events. Participation in these competitions is at the discretion of the Band Director, and the High School's curriculum guide states only that students in the Marching Band "may" perform in festivals. The students travel to these competitions on a District bus and perform in green and gold uniforms bearing the High School's colors. At competitions, the Marching Band is announced as either the "Panther Pride from Fort Zumwalt North High School" or the "Fort Zumwalt North High School Band." The nickname for the Marching Band is the "Panther Pride" because the High School's mascot is a panther.
In early September 1998, the Marching Band publicly performed the fall marching show at a "Parent Preview" night and at a High School football game. Following these performances, Lisa Leake  a parent of a Marching Band student and member of the District's school board  contacted DuBray and expressed concern that the song "White Rabbit" was included in the fall marching show. Leake was concerned that the song was included in the Marching Band's program because she believed it to be associated with drugs. She also provided DuBray with a copy of the song's lyrics.[2] It is undisputed that the lyrics to "White Rabbit" were never sung during the Marching Band's performances of the song's musical score.
After reviewing the lyrics to "White Rabbit," DuBray believed that the song related or referred to using drugs. He also believed that the band Jefferson Airplane and its lead singer, Grace Slick, are associated with the "drug culture." Based on the song's references to drugs and the band's association with the drug culture, DuBray determined that the song was inappropriate for inclusion in the fall marching show. He felt that the Marching Band should not be allowed to play the song because it would send a message inconsistent with the District's strong anti-drug policy. DuBray also felt that teachers, parents and students might perceive the District as promoting or condoning drugs if the Marching Band were allowed to play "White Rabbit" during its performances, which would again contradict the District's anti-drug stance.
On September 14, 1998, in accordance with school policy[3] DuBray instructed Babel and the principal of the High School that the Marching Band could not play the song "White Rabbit" during any of its performances. After the song was deleted from the program, the Marching Band *922 withdrew from a scheduled competition on September 19, 1998 because it was not prepared to substitute another song in place of "White Rabbit." Thereafter, Babel worked the song "The Night: Nights in White Satin" by the Moody Blues into the program. Even without "White Rabbit," the Marching Band continued to perform its thematic program in scheduled events and competitions.
Plaintiffs filed the instant action on October 23, 1998, alleging violations of the First Amendment and retaliation for exercising rights protected by the First Amendment. Plaintiffs sought temporary, preliminary and permanent injunctive relief, as well as damages. The Court denied plaintiffs' request for a temporary restraining order after a hearing held on October 23, 1998.[4] Thereafter, plaintiffs filed a two-count amended complaint seeking permanent injunctive and declaratory relief, as well as damages. Count I is brought pursuant to 42 U.S.C. § 1983 and alleges that defendants violated their First Amendment rights to free speech. Count II alleges that defendants retaliated against plaintiffs for exercising their rights to free speech protected by the First Amendment.
Defendants contend that they are entitled to judgment as a matter of law because: 1) plaintiffs did not engage in conduct protected by the First Amendment; and, 2) even if plaintiffs' conduct were considered speech entitled to First Amendment protection, defendants possessed the authority to regulate the speech because it was school-sponsored. Plaintiffs contend that summary judgment is inappropriate because the defendants' decision to regulate their speech was unreasonable. Because DuBray's decision was reasonably related to the legitimate pedagogical concerns of the District, defendants are entitled to summary judgment.

Discussion
In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S.Ct. 2548.
The First Amendment, applicable to states via the Fourteenth Amendment, guarantees the right to free speech. Although "[s]tudents in the public schools do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," Hazelwood School Dist. v. Kuhlmeier, 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988), (quoting Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969)), it is equally true that "the First Amendment rights of students in the public schools are not coextensive with the rights of adults in other settings." Hazelwood, 484 U.S. at 266, 108 S.Ct. 562 (quoting Bethel School Dist. No. 403 v. Fraser, 478 U.S. 675, 682, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986)).
*923 For purposes of this motion, the Court will assume without deciding that the Marching Band's performance of "White Rabbit" constitutes "speech" entitled to First Amendment protection.[5] Even so, plaintiffs' claims fail as a matter of law because the defendants possess broad authority to regulate the speech at issue.
In Hazelwood, 484 U.S. at 273, 108 S.Ct. 562, the Supreme Court held that school authorities may restrict "the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns."[6] The Court defined school-sponsored speech broadly to include:
"[s]chool-sponsored publications, theatrical productions, and other expressive activities that students, parents and members of the public might reasonably perceive to bear the imprimatur of the school ... whether or not they occur in a traditional classroom setting, so long as they are supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences."
Id.
Under this standard, the Marching Band's performances  including that of "White Rabbit"  clearly constitute school-sponsored speech. As in Hazelwood, the Marching Band's fall marching show was performed as a required element of the Symphonic Band class offered by the High School. Participation in the Marching Band was mandatory for  and restricted to  students enrolled in Symphonic Band. Students earned academic credit for participation in this class, which was designed to impart to students the skills of showing enthusiasm for public performance, performing with correct playing position and following the conductor. Symphonic Band was taught by Babel, the High School Band Director, who selected the songs to be played by the Marching Band and arranged the schedule of the various performances and competitions.
Moreover, the Marching Band's performances at these various events undoubtedly "bore the imprimatur" of the High School and the District. The students in the Marching Band wore uniforms bearing the High School's colors and were transported to and from performances on a District School Bus. During competition, the Marching Band was announced as the "Panther Pride from Fort Zumwalt North High School" or as the "Fort Zumwalt North High School Marching Band." These facts compel the conclusion that the Marching Band's performance of "White Rabbit" was a school-sponsored curricular activity that "bore the imprimatur" of the *924 High School and the District. See id. at 271, 108 S.Ct. 562.
In their opposition to summary judgment, plaintiffs rely heavily upon the Supreme Court's decision in Tinker, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731. Yet their reliance upon Tinker is misplaced because the present case involves school-sponsored expression. In Hazelwood, the Supreme Court distinguished Tinker as follows:
"The question whether the First Amendment requires a school to tolerate particular student speech-the question that we addressed in Tinker-is different from the question whether the First Amendment requires a school affirmatively to promote particular student speech. The former question addresses the educators' ability to silence a student's personal expression that happens to occur on the school premises ... Educators are entitled to exercise greater control over this second form of student expression to assure that participants learn whatever lessons the activity is designed to teach, that readers or listeners are not exposed to material that may be inappropriate for their level of maturity, and that the views of the individual speaker are not erroneously attributed to the school."
Id. at 270-71, 108 S.Ct. 562. Hazelwood, not Tinker, controls the outcome of this case. Defendants therefore had the authority to exercise editorial control over the Marching Band's performance of "White Rabbit" so long as their actions were "reasonably related to legitimate pedagogical concerns." Id. at 273, 108 S.Ct. 562.
While declining to define the precise parameters of "legitimate pedagogical concerns," the Hazelwood Court stated that "[a] school must also retain the authority to refuse to sponsor student speech that might reasonably be perceived to advocate drug or alcohol use, irresponsible sex, or conduct otherwise inconsistent with the shared values of a civilized social order, or to associate the school with any position other than neutrality on matters of political controversy." Id. at 272, 108 S.Ct. 562. Following the Supreme Court's decision in Hazelwood, the District and its Superintendent were undoubtedly vested with authority to restrict the Marching Band's performance of a song that might "reasonably be perceived" to advocate, or erroneously attribute to the District tolerance of, drug use. Thus, the only question that remains is whether DuBray reasonably perceived the song "White Rabbit" to be associated with drug use or the drug culture.
The Court is unwilling to substitute its judgment for that of the defendants unless "the decision to censor a school-sponsored publication, theatrical production, or other vehicle of student expression has no valid educational purpose that the First Amendment is so directly and sharply implicated...." Id. at 273, 108 S.Ct. 562 (internal quotations omitted). This standard is consistent with the view that "the education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges." Id. (emphasis added)
In the present case, the Court certainly cannot say that DuBray's decision to prohibit the Marching Band from playing "White Rabbit" was unreasonable. DuBray investigated the song after being contacted by a concerned parent. Following this investigation, he concluded that the song could reasonably be perceived to advocate drug use, its lyrics referred to drug usage and the band and its lead singer were associated with the drug culture of the late 1960s and early 1970s. Moreover, DuBray believed that the playing of this song would send "the wrong message" to teachers, parents and other members of the community that the District tacitly approved of, or tolerated, the use of drugs. For these reasons, DuBray deemed the song inappropriate for inclusion in the Marching Band's program.
Plaintiffs do not seriously dispute DuBray's interpretation of the song or the *925 historical association of the song and band with the drug culture. Instead, plaintiffs merely assert that the song's lyrics may have other interpretations, including an anti-drug theme or a satire of the literary work, Alice in Wonderland. Even if true, the mere existence of other possible alternative interpretations does not compel a finding that DuBray's decision to limit the marching band's performance by deleting "White Rabbit" from the fall marching show runs afoul of the First Amendment.
The Court finds that DuBray's decision to prohibit the playing of "White Rabbit" by the Marching Band was reasonably related to the District's legitimate pedagogical concerns and therefore did not violate plaintiffs' First Amendment rights to freedom of expression. Accordingly, defendants are entitled to summary judgment on Count I of plaintiffs' amended complaint.[7]
Because plaintiffs' First Amendment claim fails, their claim for retaliation likewise cannot stand. See Carlson v. Midway R-1 School Dist., 53 F.3d 878, 880 (8th Cir.1995). Moreover, plaintiffs do not dispute that defendants took no retaliatory action against them other than prohibiting the performance itself, a decision which does not violate their First Amendment rights. Defendants are therefore entitled to summary judgment on Count II of the amended complaint.
Finally, plaintiffs concede  and the Court agrees  that their claims for injunctive and declaratory relief are now moot. Accordingly, the Court will grant summary judgment in defendants' favor on the plaintiffs' request for injunctive and declaratory relief.
Accordingly,
IT IS HEREBY ORDERED that defendants' motion for summary judgment [# 25] is granted.
A separate judgment in accordance with this memorandum and order is entered this same date.

JUDGMENT
Pursuant to the Memorandum and Order entered this same date,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that defendants shall have summary judgment on plaintiffs' complaint, and that plaintiffs' complaint is dismissed with prejudice.
NOTES
[1] Other selected songs included "The Afternoon: Tuesday Afternoon" by the Moody Blues and "Roundabout" by Yes.
[2] The lyrics of the song "White Rabbit," by Grace Slick, are as follows:

One pill makes you larger And one pill makes you small, And the ones that Mother gives you don't do anything at all. Go ask Alice When she's ten feet tall. And if you go chasing rabbits, And you know you're going to fall, Tell `em a hookah smoking caterpillar Has given you the call. Call Alice When she was just small. When the men on the chess board Get up and tell you where to go And you've just had some kind of mushroom And your mind is moving low. Go ask Alice I think she'll know. When logic and proportion Have fallen sloppy dead, And the White Knight is talking backwards And the Red Queen's "Off with her head!" Remember what the Dormouse said:
"Feed your head. Feed your head. Feed your head."
[3] The District's policy states that "school-sponsored publications and productions are part of the curriculum and are not a public forum for general student use. School authorities may edit or delete material which is inconsistent with the District's legitimate educational concerns."
[4] Plaintiffs sought to temporarily and preliminarily enjoin defendants from prohibiting the Marching Band from including "White Rabbit" in its final three performances of the fall marching show.
[5] Although the Eighth Circuit Court of Appeals has not decided the precise issue of whether the performance of a musical score without lyrics by a high school marching band constitutes "speech" entitled to First Amendment protection, the Seventh Circuit has commented that the playing of rock and roll music should be construed as "speech" even if it "had no political message  even if it had no words ...." Reed v. Village of Shorewood, 704 F.2d 943, 950 (7th Cir.1983).
[6] In reaching this conclusion, the Supreme Court first engaged in a forum analysis to determine the level of scrutiny required to evaluate the school's actions. Id. at 267-70, 108 S.Ct. 562. "The public schools do not possess all of the attributes of streets, parks and other traditional public forums that time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Id. at 267, 108 S.Ct. 562 (internal quotations omitted). For this reason, school lacilities may be deemed public forums only where school officials have "by policy or practice opened those facilities for indiscriminate use by the general public, or by some segment of the public, such as student organizations." Id. (internal quotations omitted). The government creates a public forum only by "intentionally opening a nontraditional forum for public discourse." Id. (internal quotations omitted). Based upon the nature of the student participation and the degree of control exercised by the school over the student activity, the Supreme Court concluded that the school newspaper at issue in Hazelwood was not a public forum. Id. at 270. The Court's forum analysis applies with equal force in the present case.
[7] Additionally, DuBray is entitled to qualified immunity from plaintiffs' § 1983 claims because they have failed to establish a constitutional violation. Burnham v. Ianni, 119 F.3d 668, 673-74 (8th Cir.1997).